JACOB RICHARDSON *vs.* JOHN BIGELOW.

The grant of a mill carries by implication the right to use the watercourse furnishing power to the mill, and the raceway thereof, to the extent of the grantor's rights.

Simultaneous conveyances were made of two mills, each referring to the same plan, upon which was marked a way leading to one of the mills, which was not then laid out, and a canal leading across that way to the other mill. *Held,* that the rights of both owners were equal; that if the canal had been dug as laid out, the way must be carried over it by a bridge to be built at the expense of the owner of the way in such a manner as not to interfere with the use of the canal; but that if the canal was carried under the way by means of a penstock, the owner of the canal had not a right to substitute for the penstock an open canal.

ACTION OF TORT for obstructing a right of way in Woburn, by digging a canal across it. Trial in the court of common pleas in Middlesex at December term 1858, before *Sanger,* J., to whose rulings the defendant alleged exceptions, the material parts of which were as follows:

The Woburn Agricultural and Manufacturing Company, owning a large tract of land, which they had divided into lots, and a plan of which they had caused to be made and recorded in the registry of deeds, on the 22d of October 1838 conveyed by their trustees two contiguous lots to the defendant, and to Samuel Sweetser, the plaintiff's grantor, respectively, referring in each deed to the plan.

By the deed to the defendant, which was recorded on the 25th of May 1839, is granted " the Hill Mills, so called," described by metes and bounds, " with all the buildings thereon, and mill fixtures therein, belonging to the grantors; and said mills shall never have a privilege or right of flowing more than one inch upon the apron, as it now is, of the Richardson mill above; the mill on the street has a nine-foot breast-wheel, and the south mill has a fifteen-foot breast-wheel; the fifteen-foot breast-wheel is entitled to all the water flowing through the canal, excepting a six-horse power, which is always reserved for the use of the Rubber Factory this day sold to Samuel Sweetser; and the proprietors of the premises hereby conveyed shall never construct any other outlet from the canal than now exists, viz. two waste ways; and they shall have the proportion of two thirds in all

necessary repairs upon the canal; and in drawing down the water for summer flowing or other purposes, it shall be taken through the upper waste way."

By the deed to Sweetser, which was recorded on the 9th of March 1846, is granted "the India Rubber Factory, so called, bounded and measuring as follows, viz. southerly by lots A. 69 and 57, about three hundred and forty three feet, crossing a forty-foot street; northwesterly across the end of the canal about forty feet; northerly by Hill's Mill Lot, so called, about two hundred and eighty two feet; easterly by Hill's Mill raceway about one hundred and sixty nine feet; containing about one hundred and five rods of land; and this grantee, his heirs and assigns, shall be entitled to the first draught of water from the canal, for the use of said factory, equal to a six-horse power, on a common fifteen-foot breast-wheel, and shall be subject to one third the expense of any repairs that may be necessary on the canal; and it shall not be competent or lawful for the proprietors of the premises hereby conveyed to construct any other outlet or water way from the canal than now exists, viz. two waste ways; and in drawing from said canal the proprietors of these premises shall be under the same limitations and restrictions as are contained and provided for in the deed from these grantors to John Bigelow of the Hill's Mill, to which reference is to be had; possession to be given under this deed on the first day of April 1839."

On the plan the way claimed by the plaintiff was laid out. There was evidence that the defendant had dug two canals across this way so as to render it impassable. The only dispute was as to the right of way. Upon this evidence it was ruled that this action could be maintained, a verdict was taken by consent for the plaintiff with nominal damages, and the defendant alleged exceptions. The plan was used at the argument.

*W. Brigham*, for the defendant

*B. Dean*, for the plaintiff, cited *Morgan* v. *Moore*, 3 Gray 322, and cases cited; *Magoun* v. *Lapham*, 21 Pick. 135; *Bla ney* v. *Rice*, 20 Pick. 62; *Stone* v. *Cambridge*, 6 Cush. 270.

SHAW, C. J.    This is an action of tort, for digging a canal or watercourse across a private way of the plaintiff, and obstructing and preventing the use of it.    The land is situated in Woburn, and was formerly the property of the Woburn Agricultural and Manufacturing Company.    The land was laid out into lots, with mills standing upon a stream of water passing through it, all which are laid down on a plan recorded with Middlesex deeds, and referred to in both of the deeds from the trustees of said company, under which the parties respectively claim title. It is not easy to give a full and clear view of the localities; but perhaps it may be stated with sufficient accuracy for the decision of the present question.

It appears that Sweetser, under whom the plaintiff claims, and Bigelow, the defendant, obtained deeds of the trustees, of the same date, and that each deed refers distinctly to the same plan, which therefore is to be taken into consideration in ascertaining the rights of the respective grantees to their respective granted premises, and the appurtenances belonging to each.

It appears by the facts that at the time these deeds were executed most of the streets and ways laid down on said plan were not made, nor in a condition to be used as highways, nor was the way alleged to have been obstructed by the canal in fact built and fitted for use, though laid down on the plan as a street or highway.    The mills, one of which was granted to the defendant, were then existing, and were laid out at the same time on the same plan.

It is a well settled rule of law, that the grant of a mill carries with it, by necessary implication, the right to the use of the watercourse coming to the mill and furnishing power for working it, and also to the canal or raceway which carries the water from the mill, to the full extent of the grantor's right and power so to grant them.    *Prescott* v. *White*, 21 Pick. 341.

Upon these principles it appears to us that each of the grantees in these deeds had equal rights; the plaintiff had the right to pass along on the surface, on the parts laid down on the plan as ways, with all usual kinds of travel; and the defendant, to have

the water flow off freely from his mills. The plaintiff's, however, was not an actual way built or in use, but was a right of way, and as such carried with it the right of fitting it for actual use; but the defendant was in the actual use of his raceway from the time of the grant. Could both of these rights be enjoyed together without interference? We think they could. The defendant had a right to a raceway sufficiently wide and deep to carry off the water from his mill. If the plaintiff could not use his right of way otherwise, he had a right to build a bridge over the raceway. The land travel could be carried over the stream, but the stream could not be carried over the way; it must retain its level. Necessity therefore would determine how both of these rights could coexist and both be beneficially used.

Then comes another rule, that he who enjoys the benefit of an easement in another's soil must be at the expense of fitting, maintaining and repairing it. If therefore the plaintiff would enjoy the benefit of a way, either a footway or a way for car- riages, over the defendant's raceway, he must erect a suitable bridge over it.

It seems to us therefore, that the only question that could arise would be, whether in widening, walling up the sides, or otherwise fitting up his raceway for use, the defendant did it in an unreasonable manner, to the injury of the plaintiff's right of way, and of his reasonable enjoyment of it. But this point was not taken, and the case was not left to the jury on that ground. On the contrary, the court ruled that, if the right of way had not been abandoned or extinguished, but still existed, the digging of an artificial watercourse or canal across it was an injury for which an action would lie, without regard to the consideration whether such canal was necessary to the reasonable and benefi- cial use of the defendant's mill, or to the question whether it was reasonable in regard to place, width, depth, manner of con- stiuction and other circumstances. It is true that in this verdict the plaintiff recovers nominal damages only. But it being set- tled that the canal is a violation of the plaintiff's right, the next action for a continuance of the nuisance may give the plain- tiff substantial damages, anc ultimately lead to a judgment for

abating the nuisance by filling up the canal altogether, to the great injury, perhaps the ruin, of the defendant's mill.

*Exceptions sustained*

A new trial was had in the superior court in Middlesex at December term 1860 before *Brigham,* J., who, after a verdict for the plaintiff for nominal damages, made a report to this court, upon which the case was argued by the same counsel in January 1862, and the substance of which appears in the opinion by

HOAR, J. When this case was before us at a former term, it was understood, from an imperfect statement of the facts in the bill of exceptions, and reference to a plan, that the obstruction to the plaintiff's right of way, of which he complained, was caused by an enlargement of the canal or raceway leading from the defendant's mill. This canal was laid down upon the plan. A new trial was ordered, upon grounds stated in the opinion prepared by the late chief justice, and which were applicable to the facts as they were then presented.

But upon the second trial in the superior court, it appeared, that at the time of the execution of the deeds under which the parties respectively derive their title, the water which supplied the defendant's mill was taken to it from a canal by means of an underground penstock; that the plaintiff's right of way was across the land through which the penstock was carried; and that the obstruction to the right of way, for which the action was brought, consisted in changing this penstock into an open canal for the passage of the water, and piling up the earth, taken out in excavating the canal, by its side. These facts materially affect the rights of the parties, and make a different rule of law applicable in determining them. The grant to the plaintiff of a way over the defendant's land must be construed in reference to the facts existing at the time. And as the mode of conveying water to the defendant's mill was then such as did not interfere in any manner with the way, and there is no intimation in the defendant's deed of any contemplated change in the passage of the water, which would make the enjoyment of

the right of way more expensive or less beneficial, we think the presiding judge ruled rightly, " that the defendant had no right to convert said underground penstock, crossed by said way, into an open canal, so as to make impassable and obstruct said way for use by the plaintiff."

As the defendant owned the land, he had of course a right to take the water through it in any manner most convenient to himself, provided he did not interfere with the right granted to the plaintiff. But, as far as the right to take and provide for the passage of the water modified the grant of the right of way, it obviously makes a great difference whether a new right of making such a passage was granted, and unlimited except that it should be' reasonably exercised, or whether the parties were contracting in reference to a structure and mode of use already practically adopted, fixed and established. The grant of the mill and of the right of way are not to be regarded as conflicting, or either as impairing or qualifying the other, except so far as the nature of each may require, under the circumstances existing at the time of the grant.

The ruling of the judge who tried the cause, that the owner of land which is leased may have an action for the obstruction of a right of way appurtenant thereto, if the obstruction be of a permanent character and injurious to the reversion, has not been questioned at the argument. *Kidgill* v. *Moore*, 9 C. B. 364.

*Judgment for the plaintiff on the verdict.*